149 T.C. No. 14

UNITED STATES TAX COURT

PEI FANG GUO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4805-16.                    Filed October 2, 2017.

P, a citizen of Canada, entered the United States in 2010 to work as a post-doctoral fellow at a university. She resided in the United States until November 2011 when her employment contract with the university ended. After unsuccessfully attempting to find other employment in the United States, P returned to Canada.

Sometime in 2012 P applied for and received unemployment compensation from the State of Ohio. For 2012 she timely filed a Federal income tax return on which she treated her unemployment compensation as exempt from tax under the Convention Between the United States of America and Canada With Respect to Taxes on Income and on Capital (treaty). P was a nonresident alien during 2012.

P contends that her unemployment compensation is exempt from U.S. income tax under article XV of the treaty, which covers "Dependent Personal Services." R contends that article XV does not

apply and that article XXII, which covers "Other Income," applies and allows the United States to tax her unemployment compensation.

    1. <u>Held</u>: Article XV of the treaty does not exempt P's unemployment compensation from U.S. income tax.

    2. <u>Held</u>, <u>further</u>, article XXII of the treaty governs the tax treatment of P's unemployment compensation and permits the United States to tax it.

Pei Fang Guo, pro se.

<u>Peter N. Scharff</u>, for respondent.

OPINION

LAUBER, <u>Judge</u>: The Internal Revenue Service (IRS or respondent) determined under section 6211[1] deficiencies in petitioner's Federal income tax for 2011 and 2012 as follows:

| Year | Deficiency |
|------|------------|
| 2011 | $3,749 |
| 2012 | 1,391 |

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

After concessions,[2] the sole question remaining for decision is whether U.S.-source unemployment compensation that petitioner received during 2012 is exempt from Federal income tax under the Convention With Respect to Taxes on Income and on Capital, Can.-U.S., Sept. 26, 1980, T.I.A.S. No. 11087 (treaty). This appears to be a question of first impression in this (or any other) Court.

Petitioner contends that her unemployment compensation is exempt from U.S. tax under article XV of the treaty, which covers "Dependent Personal Services." Respondent contends that article XV does not apply and that article XXII of the treaty, which covers "Other Income," applies to make her unemployment compensation taxable. We agree with respondent.

## Background

This case was submitted fully stipulated under Rule 122. There is no dispute as to the following facts, which are drawn from the parties' stipulation of facts (as amended) and the attached exhibits. Petitioner resided in Montreal, Canada, when she petitioned this Court.

---

[2]For 2011 petitioner concedes that wage income of $31,500 was properly includible in her gross income and that she was not entitled to deduct student loan interest of $271. Petitioner asks that we abate interest on the 2011 deficiency under section 6404, but we lack jurisdiction to do this in a deficiency case. See sec. 6404(e)(1)(A).

Petitioner has been a citizen of Canada from 2003 to the present. In October 2010 she moved to Ohio to take a position as a post-doctoral fellow at the University of Cincinnati (UC). She was employed there from October 2010 through November 2011 on a nonimmigrant professional visa. She has never applied to be a lawful permanent resident of the United States.

Petitioner's employment contract with UC expired on November 30, 2011. After unsuccessfully attempting to find other employment in the United States, she returned to Canada and re-established her Canadian residency on December 1, 2011. She remained a Canadian resident through the end of 2012 and was physically present in the United States for only two days that year.

Following termination of her UC employment contract petitioner applied to the Ohio Department of Job and Family Services (department) for unemployment compensation. The department approved that application because of her prior employment with UC. During 2012 she received biweekly unemployment compensation of $15,972 from the department. It issued her a Form 1099-G, Certain Government Payments, reporting this compensation and reporting that no Federal income tax had been withheld.

Petitioner timely filed with the IRS for her 2012 taxable year Form 1040NR-EZ, U.S. Income Tax Return for Certain Nonresident Aliens With No

Dependents. On Schedule OI, Other Information, she took the position that her unemployment compensation was exempt from Federal income tax under article XV of the treaty. She reported the unemployment compensation as taxable on her Canadian income tax return for 2012; no Canadian tax was due because of offsetting deductions and credits.

The IRS selected petitioner's 2012 return for examination and, in a timely notice of deficiency, determined that she had failed to report taxable unemployment compensation of $15,972. She timely petitioned this Court for redetermination.

## Discussion

The IRS' determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner does not contend that the burden of proof should shift to respondent under section 7491(a). In any event, only legal issues remain, so the burden of proof is irrelevant. See, e.g., Nis Family Tr. v. Commissioner, 115 T.C. 523, 538 (2000).

The parties agree that petitioner during 2012 was a nonresident alien, i.e., a person who was neither a citizen nor a resident of the United States. See sec. 7701(b)(1). Nonresident alien individuals generally are taxed on their U.S.-source

income.  See secs. 871, 872.  The parties agree that petitioner's unemployment compensation, by analogy to other items of income specified in section 861, was U.S.-source income.  They agree that "gross income includes unemployment compensation," section 85(a), and that this income was "effectively connected" with the conduct by petitioner of a U.S. trade or business, see section 871(b).  The sole question presented is whether petitioner's unemployment compensation was exempt from Federal income tax under the treaty.

When interpreting a treaty or other international agreement, we begin with its text.  Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988).  We interpret a treaty according to the ordinary meaning of its terms, consistently with their context and the agreement's object and purpose.  Sanchez-Llamas v. Oregon, 548 U.S. 331, 346 (2006).  Treaties are contracts between sovereigns and, as such, should be construed to give effect to the signatories' intent.  United States v. Stuart, 489 U.S. 353, 365-366 (1989).  Because treaties are construed more liberally than private agreements, we may ascertain their meaning by looking beyond the written words to the history of the treaty, the parties' negotiations, and the practical construction they have adopted.  Air Fr. v. Saks, 470 U.S. 392, 396 (1985); see Estate of Silver v. Commissioner, 120 T.C. 430, 434 (2003); N.W. Life Assurance Co. of Can. v. Commissioner, 107 T.C. 363, 378-379 (1996).

The treaty was signed on September 26, 1980, and entered into force on August 16, 1984. The first two amending protocols, signed respectively on June 14, 1983, and March 28, 1984, also entered into force on August 16, 1984.[3] The treaty has since been amended three more times.[4]

Neither the treaty nor its protocols specify how unemployment compensation shall be treated. Only the Third Protocol even mentions unemployment compensation. It does so for the sole purpose of clarifying that such compensation shall not be included within the category of "[b]enefits under the social security legislation in a Contracting State" for purposes of article XVIII of the treaty, which governs "Pensions and Annuities." See Third Protocol, art. 9(2).

---

[3]See Protocol Amending the Convention With Respect to Taxes on Income and on Capital, Can.-U.S., Sept. 26, 1980, S. Treaty Doc. 98-7 (1983); Second Protocol Amending the Convention With Respect to Taxes on Income and on Capital, Can.-U.S., Sept. 26, 1980, as Amended by the Protocol on June 14, 1983, S. Treaty Doc. 98-22 (1984).

[4]See Revised Protocol Amending the Convention With Respect to Taxes on Income and on Capital, Can.-U.S., Sept. 26, 1980, as amended by the Protocols on June 14, 1983, and Mar. 28, 1984, S. Treaty Doc. 104-4 (1995) (Third Protocol); Protocol Amending the Convention With Respect to Taxes on Income and on Capital, Can.-U.S., Sept. 26, 1980, as Amended by the Protocols on June 14, 1983, Mar. 28, 1984, and Mar. 17, 1995, S. Treaty Doc. 105-29 (1997); Protocol Amending the Convention With Respect to Taxes on Income and on Capital, Can.-U.S., Sept. 26, 1980, as Amended by the Protocols on June 14, 1983, Mar. 28, 1984, Mar. 17, 1995, and July 29, 1997, S. Treaty Doc. 110-15 (2008).

In contending that her unemployment compensation is exempt from U.S. tax, petitioner relies on article XV of the treaty, captioned "Dependent Personal Services." Paragraph 1 thereof governs the treatment of "salaries, wages, and other similar remuneration derived by a resident of a Contracting State in respect of an employment."

Petitioner's unemployment compensation did not take the form of "salaries" or "wages." The term "remuneration" is not defined by the treaty, and therefore its meaning shall "have the meaning which it has under the law of that State concerning the taxes to which the Convention applies." Art. III(2). We thus look to the Code for guidance as to the meaning of "remuneration."

The term "remuneration" is not defined in title 26. That term makes two major appearances in the Code. It appears in section 3401, which supplies definitions for purposes of withholding income tax from wages, and in section 3121, which supplies definitions for purposes of withholding FICA tax from wages.

Section 3401(a) provides that "the term 'wages' means all remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration (including benefits) paid in any medium other than cash." Section 3401(a) then provides 23 exceptions for certain types of "remuneration" paid to certain types of employees. Sec-

tion 3121(a) provides that "the term 'wages' means all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash." Like section 3401(b), section 3121(b) provides numerous exceptions for certain types of "remuneration" paid to certain types of employees.

Just as unemployment compensation does not constitute "wages" or "salaries," we conclude that it does not constitute "similar remuneration derived * * * in respect of an employment" within the meaning of article XV. Although neither section 3121 nor section 3401(a) supplies a comprehensive definition of "remuneration," both strongly associate that term with wages and benefits paid by an employer to an employee. Petitioner was not employed by UC when she received her unemployment compensation. And she received that compensation, not from her former employer, but from the State of Ohio. Cf. sec. 3402(o)(1)(A) (providing that a supplemental unemployment compensation benefit received from an employer shall be treated "as if it were payment of wages by an employer to an employee for a payroll period" and shall be subject to wage withholding); United States v. Quality Stores, Inc., 572 U.S. __, __, 134 S. Ct. 1395, 1399-1400 (2014) (finding severance payments made by an employer to an employee to be "supplemental unemployment compensation benefits" under section 3402(o)).

Even if unemployment compensation were thought to be "remuneration derived * * * in respect of an employment," article XV(1) would not help petitioner. Paragraph 1 thereof provides that "salaries, wages and other similar remuneration derived by a resident of a Contracting State in respect of an employment shall be taxable only in that State unless the employment is exercised in the other Contracting State." If the employment is so exercised, "such remuneration as is derived therefrom may be taxed in that other State." Ibid.

If petitioner's unemployment compensation were thought to be "remuneration derived * * * in respect of an employment," it would have to be regarded as remuneration derived in respect of her former employment with UC. See ibid. That employment was "exercised" in the United States. Paragraph 1 accordingly provides that such remuneration may be taxed in the United States.

Paragraph 2 of article XV provides two exceptions to the general rule set forth above. As applicable here, it would allow Canada rather than the United States to tax petitioner's remuneration, notwithstanding that she exercised her employment in the United States, if: (1) such remuneration did not exceed $10,000 in U.S. currency or (2) petitioner was present in the United States for 183 or fewer days during 2012 and her remuneration was "not borne by an employer who is a resident" of the United States.

Petitioner's unemployment compensation, $15,972, exceeded $10,000. And although she was present in the United States for only two days during 2012, her remuneration (if such it was) was borne by the department, which is a resident of the United States. Because paragraph 2 of article XV is thus inapplicable, paragraph 1 would allow the United States to tax her unemployment compensation if it were thought to be "remuneration derived * * * in respect of an employment."

In short, petitioner's reliance on article XV is misplaced. Article XV does not govern unemployment compensation because such income is not "remuneration derived * * * in respect of an employment." And even if article XV did apply, its provisions would permit the United States to tax that income.

Given the inapplicability of article XV, respondent contends that unemployment compensation is governed by article XXII of the treaty, captioned "Other Income." This catchall provision covers items of income not dealt with elsewhere in the treaty. It provides:

> Items of income of a resident of a Contracting State, wherever arising, not dealt with in the foregoing Articles of this Convention shall be taxable only in that State, except that if such income arises in the other Contracting State it may also be taxed in that other State. [Art. XXII(1)]

This provision expressly permits the United States to tax petitioner's unemployment compensation because it arose here. The Technical Explanation to arti-

cle XXII states that "[t]he determination of where income arises * * * is made under the domestic laws of the respective Contracting states unless the Convention specifies where the income arises." See Treasury Department Technical Explanation of the Convention Between the United States of America and Canada With Respect to Taxes on Income and on Capital, Sept. 26, 1980, as amended by the Protocols on June 14, 1983, and Mar. 28, 1984, 1987-2 C.B. 298, 315. The treaty does not specify where unemployment compensation arises, and we thus look to U.S. law to determine its source. Petitioner has conceded that, under the Code, her unemployment compensation arose in the United States.

Finally, petitioner contends that if she were required to pay U.S. tax on her unemployment compensation, she would be subjected to double taxation in contravention of the treaty. Paragraph 1 of article XXIV, captioned "Elimination of Double Taxation," provides that double taxation shall be avoided, in the case of a U.S. citizen or resident, by this country's allowance of a credit for any Canadian income tax paid. Because petitioner is not a U.S. citizen or resident, paragraph 1 does not apply to her. Paragraph 2(a) of article XXIV provides that, "[i]n the case of Canada," double taxation shall be avoided by Canada's allowance of a deduction from Canadian income tax for (among other things) "income tax paid * * * to the United States on profits, income or gains arising in the United States." Be-

cause such relief would be granted by Canada, not by the United States, we lack jurisdiction to consider petitioner's entitlement to relief under paragraph 2.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.